KENNETH A. COPE, Plaintiff and Respondent, v. THEODORE R. COPE and MARGUERITE V. COPE, Defendants and Appellants.

No. 11975.
Submitted Oct. 29, 1971.
Decided Dec. 30, 1971.
Rehearing Denied Jan. 24, 1972.
493 P.2d 336.

Bolinger & Wellcome, H. A. Bolinger, argued, Bozeman, Gray-bill, Graybill & Ostrem & Warner, Donald L. Ostrem, argued, Great Falls, for defendants and appellants.

John V. Potter, Jr., argued, White Sulphur Springs, Meloy, Kline & Niklas, Peter Meloy appeared, Helena, for plaintiff and respondent.

MR. CHIEF JUSTICES JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendants-appellants from a judgment entered in the District Court of Meagher County. The case was tried by the court without a jury and judgment was entered whereby the court found the plaintiff-respondent had acquired an easement by prescription over certain land owned by defendants, and that the easement enured to the benefit of plaintiff's

successors and all other persons by invitation or contract with plaintiff. Defendants' appeal challenges the district court's judgment twofold in that: (1) The facts disclosed by the record clearly bear out plaintiff's use of the road in question was a permissive use at best, and the court therefore erred in determining plaintiff acquired an easement by prescription; (2) The record further shows that the plaintiff intends to subdivide into parcels his dominant tenement, which would substantially increase the burden upon the servient tenement, and the right of unlimited assignment by the plaintiff can only serve to increase the burden upon defendants' property.

Plaintiff's position in this appeal may be summarized as follows: (1) The district court's findings are final because defendants failed to file exceptions to the court's findings within the prescribed period of time as set forth under the provisions of Rule 52(b) of the Montana Rules of Civil Procedure; (2) The evidence clearly established an easement by prescription across defendants' land; (3) The court did not err in refusing to rule as to whether or not the possible subdivision of the dominant tenement would result in an unreasonable burden upon defendants' land.

The underlying facts forming the basis of this case are as follows:

The plaintiff, Kenneth A. Cope, in 1963 became the owner of two government survey lots which in total amount to a little over 20 acres of land. The road in question, which is called "Two Creeks" road runs from a county road in Meagher County, across lands amounting to a section and a half, which are owned by defendants, and are situated between the county road and plaintiff's land. The litigation concerning this appeal arises with respect to the status of the road running across defendants' land and giving plaintiff access to his land. This road cuts across an active ranching operation presently operated by Theodore V. Cope, who is the son of defendants' Theodore R. Cope and Marguerite V. Cope, pursuant to the terms of a certain lease dated November 1, 1967, for a term of seven years. The road follows

what is referred to in the transcript as the "Two Creek Draw", and runs down Two Creeks through five gates to the Smith River. The property adjacent to the Smith River was originally owned by plaintiff's grandmother, Rosamond Leubner. Upon her death the plaintiff's father, Kenneth T. Cope, acquired title to the property by way of a tax sale. This was brought about by an agreement between the three sons of Rosamond Leubner; Kenneth T. Cope, Charles J. Cope and Theodore R. Cope, whereby the lands were divided between the brothers, with Kenneth T. Cope receiving the lands adjacent to the Smith River, which in 1963 became the property of plaintiff. Rosamond Leubner's husband, Frank, survived her, and according to a family agreement Frank Luebner could live in a cabin on plaintiff's land as long as he wished. This agreement was noted by a lease dated August 1, 1967, between the plaintiff, the defendant Theodore R. Cope, Kenneth T. Cope, and Charles J. Cope all as lessors, and as lessee, Frank Luebner for the term of his natural life. Prior to 1947 when Mrs. Luebner passed away, the Luebner couple lived in the cabin part of each year, and since 1947 Frank Luebner has lived in the cabin every summer for a number of years. Regarding the blood relationships of the various parties in this case, the plaintiff is a nephew of the defendants, and a stepson of Frank Luebner.

We feel this entire matter may be resolved by our answering the crucial question as to whether or not the facts in the record and the relationship between all parties involved herein support the district court's determination that plaintiff had acquired an easement by prescription. Accordingly, what the record before us actually reveals and the relationship of the various parties thereto, is indeed the crux of our analysis. Generally, the courts look to a variety of acts and circumstances to determine whether the user in a particular case was adverse or permissive; however, in a great many cases, no particular circumstance is decisive other than the general overall scheme of things. At the outset, we mention that it is a general principle of law that members of a family may not acquire an easement by pre-

392

scription against each other in the absence of a showing of a clear, positive, and continued disclaimer and disavowal of title.

In reference to the case at hand, the record abounds with testimony showing the continuous and cordial relationship between the Cope families for a considerable period of time. Further, the testimony of plaintiff's predecessor occupier, Frank Luebner, shows the existence of a friendly, neighborly relationship with the defendants while Luebner was occupying the cabin on plaintiff's land and using the road which crosses over defendants' land.

It is well established law in this state that a party claiming to have acquired an easement by prescription must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period. Scott v. Jardine Gold Min. & Mill Co., 79 Mont. 485, 257 P. 406. An "Exclusive" use means that the claimants' right to use the right of way is independent of a like right of way in another. Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91. Further, any user which is permissive in its inception cannot ripen into a prescriptive right, unless there has been a distinct and positive assertion by the claimant owner of a right hostile to the owner of the servient lands. Drew v. Burggart, 141 Mont. 405, 378 P.2d 232. Finally, the presence of gates that must be opened by the user is generally considered to be strong evidence of a mere personal license to pass over the right of way. Peasley v. Trosper, 103 Mont. 401, 64 P.2d 109.

We have many times stated that the function of this Court is to determine whether there is substantial evidence to support the findings of fact of the trial court, and we will not reverse such findings of fact unless there is a clear preponderance of evidence against such findings. See Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48, and cases therein cited, and Smith v. Krutar, 153 Mont. 325, 457 P.2d 459.

Applying the foregoing general principles to the relevant facts contained in this case, there is no evidence in the record herein to support the district court's determination that plaintiff

acquired an easement by prescription. The evidence shows quite clearly that the use of the road in question by plaintiff and other members of the Cope family was permissive in nature only, and this permissive use has never changed in its status during the entire period the parties used the road. Indeed nothing is more essential to establish a right of way by prescription than those requirements that the claimant prove his use was both hostile and exclusive. The evidence at hand reveals just the contrary. The defendant, Marguerite V. Cope testified that from 1939 to 1947 Mrs. Luebner lived for part of each year in ''Frankie's cabin'', and that Mrs. Luebner always asked Mrs. Cope for permission for Mrs. Luebner's guests to come down the road to visit her. On occasion, Mrs. Cope would refuse to permit people other than Mrs. Luebner's guests and friends to use the road; furthermore, as to those of the general public who came in cars, teams and wagons, Mrs. Cope charged each vehicle a dollar or so to use the road. In any event, the testimony in the record reveals from the years 1939 to 1947 a permissive nature to the use of the road for all those concerned, and a friendly neighborly attitude between the various members of the Cope bloodlines occupying the adjoining lands. The defendant, Theodore R. Cope, testified that at no time was there any controversy between any members of the Cope families regarding the use of the road. The plaintiff testified he has never lived on the land which he acquired in 1963, and to which the road in question runs. As early as 1945, plaintiff recollects using the road for fishing and remembers as many as 20 or 30 cars a day using the road during fishing season. Plaintiff further testified there were five gates on the road, the first in the yard of defendants' property that opens up into the county road, and the last gate going onto plaintiff's property. The plaintiff testified those two gates were always closed, and that the others could be found either open or closed. As stated above, the presence of gates that must be opened by the user is strong evidence of a mere personal license to pass over a right of way.

We feel the testimony of Frank Luebner carries significant

import because it shows the consistency of the permissive nature of the road's use and the lack of any element of hostility between any of the parties living on the lands over which the road runs. Luebner testified he had an arrangement with the Copes whereby Luebner's good friends could come down the road to visit him, and the public wasn't allowed to come down unless Luebner knew them. It appears throughout all of Luebner's testimony that it remained within the discretion of the Copes as to who could come down the road to see Luebner, and at all times there was a harmonious friendship between Luebner and the Copes. Theodore V. Cope, who commenced living on his father's land in 1965, testified he had a good relationship with Frank Luebner and further testified to the following when asked what persons he allowed to use the road:

''Well if I know they are not connected with him or a strange vehicle, when they stop to open the gate I will ask them who they are and what they are doing and if they are friends of Frankie's or been invited down by him or any of the relatives, they go on now. If they are other strangers and just want to find out where the road goes, they don't go.''

Such testimony clearly shows the strong degree of control which the Copes exercise over the use of the road. The record reveals at all times they maintained that control. The record further reveals the use of the road for many years by a Great Falls fishing club, by hunters, and others, but always it appears the Copes had the final say as to its use. Surely the history of the road's use as revealed by the lengthy testimony in the record completely negates any exclusive right of one particular party or individual to use the road independent of the right of another.

We feel of equal importance is the fact that the record reveals no proof or implication of hostility during plaintiff's tenure on the land, which is a necessary element to establish adverse use or prescription. Further, both Kenneth Cope and Theodore R. Cope testified except for minor improvements made by plaintiff the road has changed very little since 1951. We feel the repairs by plaintiff were not of the kind nor nature to fall within

acts constituting adverse use. The transcript before us reveals a long history of the road's permissive use coupled with the background of a close and cordial family relationship among the parties. As previously mentioned in this opinion, a family relationship existing between the litigants creates an inference in itself that the use in controversy is permissive. Our review of the record seems to add strength to that inference.

Therefore, a careful review of all the testimony contained in the record herein leads us to the conclusion that plaintiff's use of the "Two Creek" road was and still is merely permissive and personal in nature; and accordingly; plaintiff may in no way whatsoever transfer or assign his limited personal right or license to use the road to any other person or persons.

As to the remaining issues on this appeal, we have the plaintiff's contention that the district court's findings are final because defendants failed to file exceptions to such findings within the prescribed limit.

With respect to the necessity of exceptions to findings we have previously pointed out, as we did in Stapp v. Nickels, 150 Mont. 220, 434 P.2d 141: "The effect is that counsel must point out his exceptions to the findings so that the trial court may have an opportunity to correct them."

While the defendants did not file exceptions to the findings as such, they did call the attention of the court to the alleged errors in the findings by way of a motion to amend the judgment, coupled with a motion for a new trial, which was timely served and filed under the rules. In that motion defendants called the court's attention to the fact that the judgment was conflicting and not decisive of the rights of the parties in that it decreed plaintiff was the owner of an easement over defendants' land, and that the use of said easement should not substantially increase the burden of such easement on the land, and at the same time decreed that the easement granted to plaintiff applied to his successors, assigns, transferees and other persons lawfully going to and from the property. Further, that the judgment should be amended to conform to the evidence

because there was no evidence to substantiate that plaintiff was the owner of an easement across defendants' lands by reason of adverse use and also because the evidence showed the use of the road was permissive and by agreement of the parties and limited to use by relatives of the parties and invitees of the owner of the life estate.

The court therefore, had ample opportunity to correct its findings and the judgment entered thereon and in our view this was a sufficient compliance with the rule.

Finally, because we have already found plaintiff's use to be permissive in nature, and therefore nonassignable, it will be unnecessary at this time to make any determination regarding any undue burden upon the defendants' servient tenement caused by the subdivisions proposed by plaintiff.

For these reasons the judgment is reversed.

MR. JUSTICES HASWELL, DALY, CASTLES, and The HON. THOMAS DIGNAN, District Judge, sitting in place of MR. JUSTICE JOHN C. HARRISON, concur.